**FIREFLY EQUITIES LLC, Plaintiff,**

v.

**ULTIMATE COMBUSTION CO., INC. and Naum Staroselsky, individually, Defendants.**

**No. 10 Civ. 1868 (JSR).**

United States District Court, S.D. New York.

Sept. 10, 2010.

John Mark Lane, Sharon M. Sash, Koo Larrabee Lau–Kee & Lane, L.L.P, White Plains, NY, for Plaintiff.

Kevin James Harrington, Harrington Ocko & Monk, LLP, White Plains, NY, Michael Walter Freudenberg, Harris Beach PLLC, Plattsburgh, NY, for Defendants.

## MEMORANDUM

JED S. RAKOFF, District Judge.

Plaintiff Firefly Equities LLC ("Firefly") brings this action alleging breach of contract, unjust enrichment, and fraud arising from an investment Firefly made in defendant Ultimate Combustion Co., Inc. ("UCC"), whose president is defendant Naum Staroselsky. On May 3, 2010, Staroselsky moved to dismiss the complaint against him for lack of personal jurisdiction. The Court received briefing on this motion, and following oral argument, directed supplemental briefing on the question of whether Staroselsky should be bound by a New York forum selection clause contained in an agreement with Firefly that he signed in his capacity as President of UCC. After having carefully considered these submissions, the Court denied the motion by a "bottom-line" order dated August 19, 2010. This Memorandum sets forth the reasons for that ruling.

The factual allegations relevant to the instant motion are the following: Firefly is a New York limited liability corporation. Compl. ¶ 2. UCC is a Florida corporation with an office in Sunny Isles Beach, Florida. *Id.* ¶ 3. Upon Firefly's information and belief, Staroselsky is a Florida resident, a member of UCC's board, and its majority shareholder. *Id.* Firefly's complaint in substance alleges that through a series of meetings in Europe and Florida, Staroselsky induced Alex Molozanov and Sergey Porotsky, who ultimately became members of Firefly, to invest in UCC, which aimed to develop and market a fuel charger for use in internal combustion engines. Certain terms of the investment were memorialized in a "Memorandum of Understanding" between the parties dated April 9, 2008 (the "MOU"). *Id.* ¶ 15. The complaint alleges that following Firefly's decision to invest, Staroselsky engaged in "unreasonable delays, and bizarre and erratic behavior": among other things, he wasted Firefly's resources, refused to provide basic financial information about UCC, refused to issue Firefly additional shares of common stock as required under the MOU, and refused to appoint Molozanov to UCC's board of directors as required under the MOU. *Id.* ¶¶ 18–28.

In support of his motion to dismiss for lack of personal jurisdiction, Staroselsky has submitted a declaration attesting that he has been a permanent Florida resident since 2003; that he has never owned real property in New York; that he does not own personal property in New York; and that he does not hold bank accounts, offices, or vehicles in New York. He also avers that the MOU was signed by UCC in Florida; that he never transacted business in New York; and that he had no meetings or discussions with Firefly regarding the MOU in New York. *See* Decl. of Naum Staroselsky, 4/30/10, ¶¶ 4–9. In addition, Staroselsky has submitted a reply declaration in which he denies being a majority shareholder of UCC; rather, he asserts that he owns less than 17% of its outstanding shares. Reply Decl. of Naum Staroselsky, 6/2/10 ("Staroselsky Reply Decl."), ¶ 5. In this declaration, Staroselsky also takes issue with many of the allegations of the complaint, and specifically denies having negotiated with Firefly's lawyer regarding the MOU. *Id.* ¶ 17.

Staroselsky's moving papers also attach a copy of the MOU referenced in the complaint. Decl. of Michael W. Freudenberg, 5/3/10, Ex. C ("MOU"). This agreement between UCC and Firefly was signed by Staroselsky on UCC's behalf in his capacity as "N. Staroselsky, President." Paragraph 12 of the MOU contains a choice-of-law and forum selection clause, which reads in relevant part as follows:

This Agreement shall be governed by the laws of the State of New York. Each party hereby irrevocably (a) submits to the jurisdiction of the United States District Court for the Southern District of New York and in the event that such court is without subject matter jurisdiction, the Supreme Court of the State of New York, County of New York [and] (b) admits to the personal jurisdiction of such courts over them in any such action.

As noted, the Court directed the parties to submit supplemental briefing on the question of whether this forum selection clause binds Staroselsky—who signed the MOU in his capacity as UCC's president—in his individual capacity as well. The mere difference in Staroselsky's capacities is not necessarily dispositive in his favor, as the Second Circuit has recognized that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Group v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir.2009) (citing cases from the Third, Seventh, Eighth, Ninth, and Eleventh Circuit Courts of Appeals). Indeed, courts in this Circuit and elsewhere have articulated and applied the "closely related" doctrine in ways that would easily support the exercise of jurisdiction here over Staroselsky in his individual capacity. *See, e.g., MGM Studios Inc. v. Canal+ Distrib. S.A.S.,* 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is 'closely related' to one of the signatories such that 'enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'"); *Thibodeau v. Pinnacle FX Inv.,* 2008 WL 4849957, at *5 n. 4 (E.D.N.Y. Nov. 6, 2008) ("[B]ecause defendants Bell and Francis are alleged to be principals of Pinnacle and are being sued in connection with their activities at Pinnacle, it was foreseeable to plaintiff that the forum selection clause would be applicable to any lawsuit against these closely-related individuals in connection with their work at Pinnacle."); *Weingard v. Telepathy, Inc.,* 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) ("[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" (internal quotation marks omitted)); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt., LLC,* 2003 WL 22882137, at *6 (S.D.N.Y. Dec. 4, 2003) (enforcing forum selection claims against non-signatory Chief Financial Officer by virtue of her position in signatory corporation); *see also, e.g., Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (enforcing forum selection clause against non-signatory directors of a corporation). And this Court has endorsed the proposition that "[a]fter *Aguas,* there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard." *In re Refco Sec. Litig.,* 2009 WL 5548666, at *10 (S.D.N.Y. Nov. 16, 2009) (Special Master's Report and Recommendation), *adopted by* 2010 U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010).

After careful consideration, the Court finds that Staroselsky's attempts to avoid the application of the "closely related" doctrine are unavailing. First, Staroselsky

distinguishes some (but not all) of the above-cited cases on the ground that they involve binding successors in interest to a signatory, whereas here, there is no relationship of successorship. But that is a distinction without a difference, given that the standard applied by these cases is one of whether the entities are "closely related" and thus, by its terms, is not limited to circumstances involving successorship. And this distinction, even if it does exist, does not address those of the above-cited cases that bind non-signatory corporate officers and directors.

Next, Staroselsky points out that the MOU's forum selection clause is defined in reference to the parties to this agreement and does not include language as broad as that in some of the clauses discussed in the above-cited cases. From there, he argues that the MOU's clause does not cover non-contractual claims against Staroselsky and, in any event, evinces a clear intent to apply only to the corporate entities that were parties to the agreement but not to Staroselsky individually. This construction of the clause—which provides that each party "irrevocably ... admits to the personal jurisdiction" in this Court—is insupportably cramped. For one thing, "[a] forum selection clause cannot 'be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if "the gist" of those claims is a breach of that relationship.'" *Weingrad*, 2005 WL 2990645, at *4. And although it is true that this forum selection clause refers only to the parties to the MOU, this fact does not preclude application of the "closely related" doctrine, which exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause.

It is clear to the Court that Staroselsky is related to UCC closely enough that he should be bound by the forum selection clause to which he agreed on UCC's behalf. Based on the fact that Staroselsky himself signed the MOU (albeit in his representative rather than individual capacity), it was—or should have been—foreseeable to him that the clause might have application to disputes arising under that agreement that also involved him. *See, e.g., id.* ("[The signatory] is bound by the terms of the forum selection clause even if he did not take the time to read it because 'a signatory to a contact is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed.'"). Staroselsky acknowledges that he is UCC's president and holds approximately 17% of its outstanding shares. He admits to having been involved in discussions about the MOU, to having personal knowledge of the facts of circumstances of this matter by virtue of the fact that he is UCC's president, and to having met and spoken with Porotsky and Molozanov numerous times in connection with their proposed investment. Staroselsky Reply Decl. ¶¶ 2, 7–8, 23. It is apparent that due to his involvement in the transactions underlying this litigation, Staroselsky will need to be deposed and testify at trial in his representative capacity even if he were not a party to this case in his individual capacity. In sum, it is difficult for the Court to imagine parties more closely related than Staroselsky *qua* UCC's president and Staroselsky *qua* individual.

Accordingly, the Court holds that the forum selection clause applies to Staroselsky in his individual capacity, and hereby denies his motion to dismiss for that reason alone without need for further inquiry. *See, e.g., Atl. Mut. Ins. Co. v. M/V HUMACAO*, 169 F.Supp.2d 211, 215 (S.D.N.Y. 2001) ("[W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional

personal jurisdiction analysis, including determining whether constitutional due process requirements have been met.").[1]

---

**1.** The Court also notes that Firefly has made at least a *prima facie* showing that Staroselsky is subject to jurisdiction under New York's long-arm statute, CPLR § 302(a), by virtue of the well-pleaded allegations that Staroselsky used UCC as his agent, *see Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). But while Staro-selsky might be entitled to an evidentiary hearing to test Firefly's allegations in this regard were this the only basis for jurisdiction, there is no need for such a hearing due to the fact that Staroselsky is bound by the New York forum selection clause as a matter of law under the "closely related" doctrine.