KTV MEDIA INTERNATIONAL,
INC., Plaintiff,

v.

GALAXY GROUP, LA LLC, Defendant.

No. 10–CV–03973.

United States District Court,
S.D. New York.

July 14, 2011.

---

Frank Anthony Taddeo, Law Offices of Frank Taddeo, New York, NY, for Plaintiff.

## OPINION & ORDER

JUDITH M. BARZILAY, Senior District Judge.*

BARZILAY, Senior Judge: Plaintiff KTV Media International, Inc. ("Plaintiff" or "KTV Media International"), a web developer incorporated in the State of New York, filed this action for breach and anticipatory breach of contract against Defen-

dant Galaxy Group, LA LLC ("Defendant" or "Galaxy"). The parties, through alleged predecessors-in-interest, originally contracted that KTV Media International would construct an online, user-friendly system for the sale of lottery tickets, though Galaxy subsequently terminated this agreement. *See generally* Am. Compl. Galaxy brings the instant motion to dismiss based on a forum selection clause contained in a particular operating agreement, which, it argues, mandates that a state or federal court in California hear these claims. Def.'s Mot. to Dismiss 1–2. Alternatively, Defendant requests that the court transfer this case to the District Court for the Central District of California. Def.'s Mot. to Dismiss 17. The principal question before the court asks whether the broad language of the forum selection clause encompasses Plaintiff's claims. For the reasons below, the court finds that it does and therefore grants Defendant's motion to dismiss without prejudice and denies its motion to transfer.

## I. Background [1]

The instant dispute emerges out of a host of agreements executed by the parties or their alleged predecessors-in-interest between 2008 and 2010. In July 2008, Danger Dust LLC ("Danger Dust"), alleged predecessor-in-interest to Plaintiff, entered into the first of these agreements with LottoGopher LLC ("LottoGopher"), a California-based media company and predecessor-in-interest to Defendant, *see generally* Taddeo Decl. Ex. 1, to develop a website that would allow users to purchase lottery tickets, pool these tickets into groups, and track their winnings (the "Website"), Am. Compl. ¶ 10; Def.'s Mot. to Dismiss 1. In return for timely development of the Website, the parties agreed

---

* The Honorable Judith M. Barzilay, Senior Judge, United States Court of International Trade, sitting by designation.

1. Unless otherwise noted, the parties do not dispute the relevant facts.

that Danger Dust would receive a five percent equity interest in LottoGopher. Am. Compl. ¶¶ 9, 12. Defendant's submissions unquestionably demonstrate, and Plaintiff does not dispute, that the parties incorporated this agreement into the First Amendment to LottoGopher's principal operating agreement on July 28, 2008 ("LottoGopher Operating Agreement"). Meyers Decl. Ex. I at 1.

Third-party designers hired by LottoGopher and other factors beyond Danger Dust's control purportedly prevented timely completion of the Website. Am. Compl. ¶ 13–14. Nevertheless, the parties agreed that Danger Dust would continue its work on the website despite the missed deadline and, in later amendments to the LottoGopher Operating Agreement, altered the equity interest consideration. Am. Compl. ¶¶ 13–14; Meyers Decl. Ex. J (amended equity interest in Second, Third, and Seventh Amendments to LottoGopher Operating Agreement).

By the end of 2009, neither Danger Dust nor LottoGopher remained parties to the Website development agreement. In July of that year, Danger Dust assigned its interest in the agreement to KTV Media, Inc. ("KTV Media"), Am. Compl. ¶ 15, and that fall KTV Media and LottoGopher executed new terms and benchmarks for development of the Website (the "2009 Terms and Benchmarks"). The 2009 Terms and Benchmarks set an updated timetable for development of the site and provided that LottoGopher would make payments of $17,000 to KTV Media and $60,000 to a KTV Media principal and would "reinstate [the five percent] equity [due] to Danger Dust upon full and satisfactory completion of the benchmarks . . . ." [2] Taddeo Decl. Ex. 4. Allegedly unavoidable difficulties again led to delays in completing the Website, and while it made the $17,000 payment to KTV Media, LottoGopher withheld the larger payment to the KTV Media principal. Am. Compl. ¶ 17. Ultimately, on December 31, 2009, LottoGopher executed a final dissolution agreement,[3] the terms of which required the company to sell and assign its interest in the Website to Galaxy. Meyers Decl. Ex. L at 3.

To govern membership interests in and maintenance of the company, members of Galaxy executed an LLC operating agreement on January 16, 2010 (the "Galaxy Operating Agreement"). See generally Taddeo Decl. Ex. 5. Among other parties, KTV Media signed the agreement, and Exhibit A of the Galaxy Operating Agreement lists Danger Dust as a member with a five percent "Member's Percentage Interest" and a "Member's Capital Contribution" of "LottoGopher, LLC Membership,

---

2. Contrary to Plaintiff's strange assertion in its briefing, the 2009 Terms and Benchmarks clearly references the First Amendment to the LottoGopher Operating Agreement, in which LottoGopher made the initial promise of a five percent equity interest. *Compare* Pl.'s Opp'n 7 ("Critically, the 2009 [Terms and Benchmarks] Agreement does *not* reference the 2008 Lotto [Operating Agreement] in any manner or hold out the carrot of [LottoGopher] *membership* upon delivery of the website." (emphasis in original)), *with* Am. Compl. ¶ 16 ("On or about October [ ] 2009, [LottoGopher] and KTV Media entered into a new agreement for the completion of the Lottery Website . . . . Under [this Agreement], . . .

[LottoGopher] agreed to pay KTV Media $17,000.00 and a KTV Media principal $60,000.00, and grant a five (5%) ownership interest in [LottoGopher] to KTV Media."), *and* Taddeo Decl. Ex. 4 (2009 Terms and Benchmarks referencing July 28, 2008 First Amendment to LottoGopher Operating Agreement and specifically noting provision of equity interest in exchange for completion of website).

3. Although Plaintiff alleges that LottoGopher dissolved on January 26, 2010, Am. Compl. ¶ 18, this issue of fact does not prove relevant to the court's ultimate analysis.

Services."[4] Taddeo Decl. Ex. 5 at 16, 17. The signature on behalf of KTV Media appears identical to that found in other agreements signed by Danger Dust or KTV Media. *See, e.g.,* Taddeo Decl. Exs. 4, 5 at 16; Meyers Decl. Exs. H, I at 3, L at 6. The parties do not dispute that this agreement governs all membership interest in Galaxy, *see generally* Taddeo Decl. Ex. 5, and supersedes all prior contracts between the LLC members as to the same subject matter. Taddeo Decl. Ex. 5 at 13. Importantly, Paragraph 10.11 of the Galaxy Operating Agreement provides:

> Each Member hereby consents to the exclusive jurisdiction of the state and federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement. Each Member further agrees that personal jurisdiction over him or her may be effected by service of process by registered or certified mail ..., and that when so made shall be as if served upon him or her personally within the State of California.

Taddeo Decl. Ex. 5 at 14. The language of this forum selection clause mirrors text on the same topic found in the LottoGopher Operating Agreement. Meyers Decl. Ex. J at 18.

KTV Media and LottoGopher subsequently assigned the 2009 Terms and Benchmarks to Galaxy on February 2, 2010 (the "February 2010 Assignment Agreement"). *See* Taddeo Decl. Ex. 6. In so doing, the parties represented that all terms in the 2009 agreement would remain in full force and effect with the exception of the "change from LottoGopher LLC to Galaxy Group LA, LLC in all instances" and that the $60,000 payment would now go to a different KTV Media principal, Josh Kimberg ("Kimberg"). Taddeo Decl. Ex. 6. Notably, Kimberg also serves as principal of Danger Dust, Compl. ¶ 11 (Plaintiff's original complaint describing Danger Dust as a "Josh Kimberg limited liability company"), and concurrently as registered agent for Plaintiff, Taddeo Dec. Ex. 3.

According to Plaintiff, KTV Media assigned the 2009 Terms and Benchmarks and the February 2010 Assignment Agreement to KTV Media International "on or about February 2010," with Defendant's full knowledge and consent. Am. Compl. ¶ 19; Meyers Decl. Ex. C (email from Plaintiff's counsel to Galaxy's counsel representing that assignment comprised "February 2, 2010 writing and an amendment thereafter").[5] Defendant disputes Plaintiff's assertion that it consented to any assignment of interest from KTV Media to KTV Media International. Def.'s Mot. to Dismiss 3 n. 2, 6.

In the spring of 2010, the relationship between the parties broke down.[6] Plaintiff

---

4. Danger Dust was originally named on the signature page, but appears to have been crossed out and replaced with KTV Media, with the initials "JK" next to this handwritten amendment. Taddeo Decl. Ex. 5 at 16.

5. Plaintiff has submitted no documentary evidence of this purported assignment, nor does it state what other agreements or interests, if any, KTV Media assigned to KTV Media International. Plaintiff's clearest expression on this point lies in its opposition brief: "As indicated in the [First Amended Complaint] (Paragraph 19), an assignment was made by

KTV Media to [KTV Media International] 'on or about February 2010', and the issue arises as to what exactly was assigned. Pre-answer, with no discovery as yet undertaken, with as yet no review of the no doubt extensive email traffic between the Plaintiff and Defendant Groups, the response must be: *the 2009 [Terms and Benchmarks] and Feb. 2010 [Assignment] Agreements,* as they may have been later amended orally and in email communications ...." Pl.'s Opp'n 9.

6. Defendant suggests in its pleadings that the relationship worsened slightly earlier. Def.'s

alleges that it "delivered a fully functioning website" to Galaxy on April 11, 2010, and thereafter sent Galaxy certain data from the Website that Galaxy could refer to a third party auditor. Am. Compl. ¶ 22. On May 2, 2010, James Morel, Managing Member of Galaxy emailed Kimberg stating that the auditor found that the Website did not function and that Galaxy could use "little, if any, of the work done by KTV Media." Taddeo Decl. Ex. 8. Morel requested that Kimberg return the $17,000 LottoGopher had paid to KTV Media in 2009 and stated that the company would amend the Galaxy Operating Agreement "to clarify that KTV Media is not a 5% member of the company." Taddeo Decl.

Ex. 8. Counsel for Galaxy reiterated this message in a letter to Kimberg on May 4, 2010, stating that Galaxy had suffered damages as a result of KTV Media's delays and threatening suit if the parties could not resolve the matter within ten days. Taddeo Decl. Ex. 7 at 1–2. Plaintiff's suit followed.

## II. Subject Matter Jurisdiction & Standard of Review

This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(1).[7] Defendant moves to dismiss Plaintiff's action based on improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3),[8] and the court may review materials outside the pleadings in

---

Mot. to Dismiss 11 (arguing that KTV Media, incorporated on March 1, 2010, formed after relationship between parties broke down); Def.'s Reply 6 (same).

7. Defendant makes a stray reference to seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Def.'s Mot. to Dismiss 11. While some courts have allowed movants to seek dismissal on subject matter jurisdiction grounds in these circumstances, see, e.g., AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 152–55 (2d Cir.1984), others have noted that such a ruling erroneously implies that the court does not have subject matter jurisdiction over the suit, see New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir.1997). Because the court dismisses on the basis of improper venue under Rule 12(b)(3), it need not address this issue.

8. Defendant alternatively seeks dismissal under Rule 12(b)(6) for failure to state a claim. As yet, "no consensus [has] developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." New Moon Shipping Co., 121 F.3d at 28; Anwar v. Fairfield Greenwich Ltd., 742 F.Supp.2d 367, 371 (S.D.N.Y.2010) ("[N]either the Supreme Court nor the Second Circuit Court of Appeals has 'specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.' " (citation omitted)). "The difficulty with this question arises from the fact that a forum selection clause cannot oust

a federal court of personal or subject matter jurisdiction or render venue improper." Lurie v. Norwegian Cruise Lines, Ltd., 305 F.Supp.2d 352, 356 (S.D.N.Y.2004). The Second Circuit, however, has endorsed both Rule 12(b)(3) and 12(b)(6) as proper means of seeking dismissal based on forum selection clauses, see Phillips v. Audio Active Ltd., 494 F.3d 378, 383–84 (2d Cir.2007) (12(b)(3) proper grounds to seek dismissal); Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 508 n. 6 (2d Cir.1998) (12(b)(6) proper grounds to seek dismissal), with the major practical difference between the two being "that the former rule allows courts to consider materials outside the pleadings, while the latter does not." Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F.Supp.2d 447, 450 (S.D.N.Y.2002); see also Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir.2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants ... or relies on factual allegations contained in legal briefs or memoranda ... in ruling on a 12(b)(6) motion to dismiss." (internal citations, quotation marks, & brackets omitted)). Because plaintiff has not objected to the use of either procedural mechanism, and both parties have submitted and rely upon materials outside the pleadings, the court treats this motion as one for dismissal under Rule 12(b)(3). See Cuno, Inc. v. Hayward Indus. Prods., Inc., No. 03–CV–3076, 2005 WL 1123877, at *1 n. 1 (S.D.N.Y.2005) (analyzing motion to dismiss under Rule 12(b)(3) standard where plaintiffs submitted materials outside pleadings).

deciding whether to grant Defendant's motion. *Jockey Int'l, Inc. v. M/V Leverkusen Express,* 217 F.Supp.2d 447, 450–51 (S.D.N.Y.2002). At this stage, Plaintiff bears the burden of making a prima facie showing that venue is proper, and the court views "all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 384 (2d Cir. 2007). "If the [parties'] submissions reveal any material issues of fact, . . . so long as the plaintiff has made a *prima facie* showing of the propriety of proceeding with the action, the court [will] resolve any factual disputes following an evidentiary hearing at which the plaintiff is afforded an adequate opportunity to be heard." *Uniwire Trading LLC v. M/V Wladyslaw Orkan,* 622 F.Supp.2d 15, 18 (S.D.N.Y.2008); *accord New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997). In the absence of any disputed facts, the court must decide the remaining issues of law. *Asoma Corp. v. SK Shipping Co.,* 467 F.3d 817, 822–23 (2d Cir. 2006).

## III. Discussion

### A. The Forum Selection Clause in the Galaxy Operating Agreement Applies to Plaintiffs Claims

Determining the scope of a forum selection clause is a matter of contractual interpretation, *see Yakin v. Tyler Hill Corp.,* 566 F.3d 72, 76 (2d Cir.2009); *Phillips,* 494 F.3d at 387 (forum selection clause is "a creature of contract"), and "[t]he Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.,* No. 09–CV–7268, 2009 WL 4907060, at *3 (S.D.N.Y.2009) (citation omitted). The Second Circuit has formulated a four-part test to determine when a forum selection clause warrants dismissal.[9] The court

9. The Second Circuit also has raised the question of what law should govern interpretation of a forum selection clause where, as here, the contract containing the clause also contains a choice-of-law provision. *See Phillips,* 494 F.3d at 384–86. While "[t]here is no doubt that the first and fourth steps of the [four-pronged test to determine the enforceability of a forum selection clause] . . . are procedural in nature and are to be analyzed under federal law," *Bluefire Wireless, Inc.,* 2009 WL 4907060 at *2, the Second Circuit has stated that it could not "understand why the interpretation of a forum selection clause [for prongs two and three] should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole." *Phillips,* 494 F.3d at 386. Where parties have not cited to the law provided in the choice-of-law clause, however, the court may reasonably conclude that they have consented to the application of federal law to interpret the forum selection clause. *See, e.g., id.* (district court's application of federal law proper as neither party objected to its use); *Exp.-Imp. Bank v. Hi-Films S.A. de C.V.,* No. 09–CV–3573, 2010 WL 3743826, at *5 n. 2 (S.D.N.Y.2010); *Bluefire Wireless, Inc.,* 2009 WL 4907060 at *2 (where neither party briefed law specified in choice-of-law provision, nor provided declaration from local law expert, proper to apply federal law); *Cfirstclass Corp. v. Silverjet, PLC,* 560 F.Supp.2d 324, 328 n. 2 (S.D.N.Y.2008) ("[W]here, as here, the parties do not invoke [the law provided in the choice-of-law clause] in their briefs, courts may apply 'general contract law principles and federal precedent to discern the meaning and scope of the forum selection clause.' " (quoting *Phillips,* 494 F.3d at 386)). Paragraph 10.10 of the Galaxy Operating Agreement provides that the "Agreement shall, in all respects, be governed by the laws of the State of California applicable to agreements executed and to be wholly performed within the State of California." Taddeo Decl. Ex. 5 at 14. While Defendant cites decisions from federal courts sitting in California, *see* Def.'s Mot. to Dismiss 15–16, the parties have not relied on California state law to interpret the clause but rather themselves rely on federal precedent, *see generally* Def.'s Mot. to Dismiss; Pl.'s Opp'n; Def.'s Reply Br. The court therefore will apply federal law to interpret the forum selection clause in the Galaxy Operating Agreement.

must determine (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive, i.e., ... whether the parties are *required* to bring any dispute to the designated forum or simply permitted to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 494 F.3d at 383 (emphasis in original); *accord S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir.2010) (citation omitted). If the clause satisfies the first three elements, it is "presumptively enforceable," and, under the fourth step, the party resisting enforcement then bears the burden of rebutting this presumption by making "a sufficiently strong showing" that "enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or overreaching." *Phillips*, 494 F.3d at 383–84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). The court examines these four prongs in turn.

### 1. The Clause Was Reasonably Communicated to KTV Media International

■■ First, the court finds the forum selection clause was "reasonably communicated" to Plaintiff. As noted, Kimberg— registered agent for KTV Media International—has signed many, if not all, of the agreements executed between the parties on behalf of Danger Dust and later KTV Media, including the Galaxy Operating Agreement. *See* Taddeo Decl. Ex. 4 (2009 Terms and Benchmarks, with Kimberg signing on behalf of KTV Media / Danger Dust); Taddeo Decl. Ex. 6 (February 2010 Assignment Agreement, with Kimberg signing on behalf of KTV Media); Meyers Decl., Ex. H (intellectual property agreement between KTV Media and Galaxy regarding Website, with Kimberg signing on behalf of KTV Media); *cf.* Taddeo Decl.

Ex. 5 at 16 (Galaxy Operating Agreement, with same signature as appearing on documents signed by Kimberg and with initials "JK" next to change from Danger Dust to KTV Media); Meyers Decl. Ex. I at 3 (First Amendment to LottoGopher Operating Agreement, with same signature as appearing on documents signed by Kimberg); Meyers Decl. Ex. L at 6 (Final Dissolution Agreement for LottoGopher, with same signature as appearing on documents signed by Kimberg). Additionally, KTV Media International claims successor-in-interest status under at least two agreements that provide equity in Galaxy, a matter governed by the Galaxy Operating Agreement. Indeed, Plaintiff does not contend that it was unaware of either the Galaxy Operating Agreement or the forum selection clause contained therein when it allegedly acquired those interests. These facts demonstrate that the forum selection clause was "reasonably communicated" to Plaintiff. Regardless, as discussed below, even "[i]n the absence of direct communication of a forum-selection clause to a non-signatory, the non-signatory may be nevertheless bound by the clause" if, as in this case, the non-signatory is "closely related" to a signatory to the contract containing the forum selection clause. *Great N. Ins. Co. v. Constab Polymer–Chemie GmbH & Co.*, No. 5:01–CV–0882, 2007 WL 2891981, at *8 (N.D.N.Y.2007) (citation omitted).

### 2. The Forum Selection Clause is Mandatory

■ With respect to the second prong, the court turns to the language of the forum selection clause to determine if it is mandatory as opposed to permissive. *S.K.I. Beer Corp.*, 612 F.3d at 708 (citing *Phillips*, 494 F.3d at 386). As noted, the clause provides that each member in Galaxy "consents to the exclusive jurisdiction of the state and federal courts sitting in California." Taddeo Decl. Ex. 5 at 14.

Defendant correctly identifies the patently mandatory nature of the clause, *see S.K.I. Beer Corp.*, 612 F.3d at 708 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." (quoting *Phillips*, 494 F.3d at 386)); *Brennen v. Phyto–Riker Pharms., Ltd.*, No. 01–CV–11815, 2002 WL 1349742, at *3 (S.D.N.Y.2002) (noting that "inclusion of the phrase 'exclusive jurisdiction' indicates an intent that any dispute ... be filed in one of the fora specified"), and Plaintiff does not dispute this categorization.

### 3. The Claims and Parties in the Suit are Subject to the Clause

■ On the issue of whether the parties and Plaintiffs claims fall within the scope of the clause, the court answers affirmatively. Defendant argues that Plaintiff cannot seek recovery for development of the Website—including equity ownership in Galaxy—while simultaneously denying the enforceability of the Galaxy Operating Agreement. *See generally* Def.'s Mot. to Dismiss; Def.'s Reply. Defendant also avers that the merger clause of the Galaxy Operating Agreement renders that agreement the sole surviving contract between the parties. Def.'s Mot. to Dismiss 2, 4–5; Def.'s Reply 1–3. Plaintiff responds that it never signed the operating agreement, that the operating agreement does not govern the parties' dispute concerning development of the Website, and that, in any case, the agreement's ambiguous terms render it unenforceable. Pl.'s Opp'n 2, 4–9. The court finds Plaintiff's arguments unpersuasive.

■ Turning first to the relevant text, the broad language of Paragraph 10.11 of the Galaxy Operating Agreement extends the reach of the clause to any action "arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement." Taddeo Decl. Ex. 5 at 14. Where broadly worded, a "forum selection clause is not limited solely to claims for breach of the contract that contains it." *Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir.1993)). In determining whether the clause extends to Plaintiff's claims, this court "examine[s] the substance of those claims, shorn of their labels." *Phillips*, 494 F.3d at 388 (citation omitted). While Plaintiff's claims arguably may not "aris[e] out of" the Galaxy Operating Agreement,[10] they clearly "aris[e] ... in connection with [the] Agreement" or "aris[e] out of, under or in connection with ... the transactions contemplated by [the] Agreement." Taddeo Decl. Ex. 5 at 14. Plaintiff's case relies, in no small part, on the accusation that Defendant wrongfully withheld Plaintiff's rightful equity interest in Galaxy, Am. Compl. ¶ 23; Pl.'s Opp'n 9, a matter squarely governed by the Galaxy Operating Agreement, Taddeo Decl. Ex. 5 at 1–2 (terms for capital contributions of Galaxy members), 2 (admission of and payments to members), 5–10 (transfer and assignment of interest in Galaxy), and 14 (non-competition clause). Furthermore, the Galaxy Operating Agreement clearly describes Danger Dust's capital contribution as including "Services," Taddeo Decl. Ex. 5 at 17, and Plaintiff has offered no evidence that this term refers to anything but development

---

**10.** The Second Circuit has interpreted the phrase "arise out of" more narrowly to refer only to claims "originating from" the contract. *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir.2001) (citation omitted); *see also Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07–CV–9580, 2008 WL 4833001, at *7 (S.D.N.Y.2008) (phrase "arising out of" narrower than "in connection with").

of the Website, the sole axis of the parties' interaction. Without such a transaction, Plaintiff could not present a claim for breach or anticipatory breach of contract due to Galaxy's request for return of the $17,000 payment made to KTV Media and Galaxy's expressed intention to amend the Galaxy Operating Agreement so as to remove KTV Media as a member. *See N.Y. Metro Radio Korea, Inc. v. Korea Radio USA, Inc.,* No. 07–CV–4123, 2008 WL 189871, at *4 (E.D.N.Y.2008) ("Plaintiff ... filed this claim in response to defendant's cease and desist letter, in which defendant asserted its rights ... under the [agreement containing the forum selection clause]. Because the Court's determination of the rights and duties of the parties will depend on the interpretation of [that agreement], plaintiff's lawsuit constitutes a dispute regarding that contract.").

█ Plaintiff fails to persuade the court that the clause does not cover the subject parties and claims. As an initial matter, the fact that the Galaxy Operating Agreement does not list KTV Media International as a signatory "is insufficient, standing alone, to preclude enforcement of [the] forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir.2009). A movant seeking dismissal may enforce a forum selection clause against a non-signatory where the non-signatory is "closely related" to one of the signatories to the contract containing the subject clause such that "enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *MGM Studios Inc. v. Canal Distrib. S.A.S.,* No. 07–CV–2918, 2010 WL 537583, at *5 (S.D.N.Y. 2010) (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,* No. 99–CV–10550, 2000 WL 1277597, at *3 (S.D.N.Y.2000)). Previous courts have repeatedly found non-signatories "closely related" to signatories where their "interests are 'complete-

ly derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Weingrad v. Telepathy, Inc.,* No. 05–CV–2024, 2005 WL 2990645, at *5 (S.D.N.Y.2005) (citing *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998)). While successors-in-interest unquestionably fit within the definition of "closely related," *see MGM Studios Inc.,* 2010 WL 537583 at *5 (citation omitted); *Aguas Lenders Recovery Grp. LLC,* 585 F.3d at 701 (successors-in-interest subject to presumption of enforceability of mandatory forum selection clause), "[i]t is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses," *Atlasjet Uluslararasi Havacilik A.S. v. EADS Aeroframe Servs., LLC,* No. 07–CV–212, 2009 WL 436420, at *4 (S.D.N.Y.2009) (quoting *Weingrad,* 2005 WL 2990645 at *4); *see also Firefly Equities, LLC v. Ultimate Combustion Co.,* 736 F.Supp.2d 797, 800 (S.D.N.Y.2010) (corporate president who signed contract on behalf of company subject as individual to forum selection clause); *MGM Studios Inc.,* 2010 WL 537583 at *5 (corporate parents allegedly owning majority shares, with direct or indirect controlling interest in signatory, "closely related"); *Bluefire Wireless, Inc.,* 2009 WL 4907060 at *2 n. 4 (non-signatory defendants "closely related" where plaintiff "base[d] their alleged liability exclusively on conduct of [signatory]"); *Weingrad,* 2005 WL 2990645 at *5–6 (non-signatories who allegedly acted in concert with signatory "closely related").

The record establishes that KTV Media International is "closely related" to KTV Media. Plaintiff's claims for breach and anticipatory breach completely derive from and directly relate to KTV Media's conduct developing the Website. *See* Am. Compl. ¶¶ 19, 21–22; *see also id.* ¶ 25 ("Plaintiff, individually and through its

predecessors-in-interest [Danger Dust] and KTV Media ..., performed all of the [web development] Services required ....”). Additionally, Plaintiff's assertion of Defendant's wrongdoing rests, in good part, on Galaxy's refusal to honor the promise of equity interest, a matter governed solely by the Galaxy Operating Agreement. *See* Am. Compl. ¶ 23; Pl.'s Opp'n 9. In other words, Plaintiff's claims and the relief it seeks directly relate to KTV Media's status as a signatory to the operating agreement. Moreover, Plaintiff goes so far as to refer to itself, KTV Media, and Danger Dust jointly as “the Plaintiff Group,” Pl.'s Opp'n 2–3, and the court previously has found such statements indicative of a closely related status, *cf. Bluefire Wireless, Inc.*, 2009 WL 4907060 at *2 n. 4 (non-signatories closely related where Plaintiff “refers to all Defendants in the singular ... and bases their alleged liability exclusively on the conduct of [signatory]”).

▮ The court finds similarly unavailing Plaintiff's suggestion that the forum selection clause does not apply to its claims because the Galaxy Operating Agreement does not govern the Website's development. While leaving the court in the dark as to whether KTV Media ever assigned the Galaxy Operating Agreement to KTV Media International, Plaintiff argues that this dispute arises out of the “independent understanding” the parties promulgated in the 2009 Terms and Benchmarks and February 2010 Assignment Agreement, and that the Galaxy Operating Agreement “has been superseded by the combination of the[se] two computer contracts.” Pl.'s Opp'n 9; *see id.* 7 (“[The] [2009 Terms and Benchmarks] does what the Galaxy [Operating Agreement] does not. A computer contract, it provides the terms of the [W]ebsite development and production work and forms of consideration expected ....”). The court views Plaintiff's efforts as a mere attempt to “plead around the

[Operating] Agreement's forum selection clause,” *Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07–CV–1212, 2008 WL 905044, at *5 (E.D.N.Y.2008) (forum selection clause enforceable where resisting party argued claim arises under separate contract, but gravamen of claim arose under agreement containing clause), as Plaintiff has offered no evidence that these two documents have in any sense superseded the Galaxy Operating Agreement. The court will not allow a “forum selection clause [to] be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship.” *Weingrad,* 2005 WL 2990645 at *4 (quoting *Anselmo v. Univision Station Grp., Inc.*, No. 92–CV–1471, 1993 WL 17173, at *2 (S.D.N.Y.1993) (internal quotation marks omitted)).

### 4. Plaintiff Does Not Rebut the Presumption of Enforceability

▮ Once the court deems a forum selection clause presumptively enforceable, a party seeking to avoid enforcement bears a “heavy burden” of rebutting this presumption. *E.g., Bluefire Wireless, Inc.*, 2009 WL 4907060 at *2. Plaintiff may avoid enforcement by demonstrating that “(1) ... incorporation [of the clause] was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.” *Phillips,* 494 F.3d at 392 (citing *Roby,* 996 F.2d at 1363). “The Supreme Court has construed this exception narrowly,” *Tropp v. Corp. of Lloyd's,* 385 Fed.Appx. 36, 37 (2d Cir.2010) (citation omitted), and Plaintiff has failed to meet this demanding burden. If any

negative impact would come to Plaintiff should it be required to bring this suit in California, Plaintiff has not alleged it, nor has Plaintiff alleged that Defendant has engaged in anything resembling fraud or overreaching. Therefore, the forum selection clause applies to this action.

Further seeking to avoid application of the forum selection clause, Plaintiff points to several examples of purported ambiguity in the Galaxy Operating Agreement, the most relevant of which is that Exhibit A to the agreement lists Danger Dust, as opposed to KTV Media, as a member, and that the agreement fails to clearly define Plaintiff's capital contribution of "Services." Pl.'s Opp'n 5–6. Plaintiff concludes that "[a]dditional documentary and parole evidence is obviously necessary to resolve these ambiguities ... before the forum selection clause can possibly be enforced." Pl.'s Opp'n 6. This argument must fail. As Defendant notes, the Galaxy Operating Agreement contains a severability clause providing that "[i]f any provision of this Agreement or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those to which it is held invalid shall not be affected thereby." Taddeo Decl. Ex. 5 at 13. Assuming that Plaintiff could show irreconcilable ambiguity in the document,[11] this would not affect the enforceability of the forum selection clause.

Finally, as noted above, Defendant devotes much of its motion to the argument that the merger clause contained in the Galaxy Operating Agreement integrates all other agreements between the parties, including the 2009 Terms and Benchmarks and the February 2010 Assignment Agreement, and therefore "is the only [agreement] which now governs." Def.'s Mot. to Dismiss 4. Paragraph 10.1 of the Galaxy Operating Agreement provides that it and Galaxy's Articles of Incorporation "constitute the complete and exclusive statement of agreement among the Members with respect to the subject matter herein and therein and replace and supersede all prior written and oral agreements among the Members." Taddeo Decl. Ex. 5 at 13. The court declines to read this clause as extending to the website development contracts, particularly as the parties executed the latter after the Galaxy Operating Agreement came into effect and the February 2010 Assignment Agreement provides that the 2009 Terms and Benchmarks "is in full force and effect." Taddeo Dec. Ex. 6. Regardless, the broad language of the forum selection clause covers Plaintiffs claims even if the merger clause does not integrate all agreements, and therefore the court need not reach the question of the scope of the merger clause.

**B. Plaintiffs Claim of Rescission Does Not Bar Application of the Forum Selection Clause**

▮▮▮▮ Plaintiff briefly concludes that even if the court deems the Galaxy Operating Agreement enforceable, Defendant rescinded the contract by "withdrawing its

---

**11.** Plaintiff also argues that the Galaxy Operating Agreement does not apply because of Defendant's position that KTV Media never satisfied the condition precedent for its membership interest in Galaxy, namely the successful development of a functioning website. Pl.'s Opp'n 7. This argument conflates the substance of Plaintiff's claims for breach and the issue of where those claims should be heard. Indeed, the merits of this action depend upon Plaintiff establishing that it, together with KTV Media, met this condition for membership, and is therefore owed payment as a result. The court therefore believes the issue of whether equity interest vested is intimately tied to the merits of this case, and therefore leaves this issue to be decided by the courts designated in the forum selection clause.

pledge of an equity interest to Plaintiff upon the latter's final delivery of a final website," as expressed in an email and subsequent letter to Plaintiff. Pl.'s Opp'n 10 (citing Taddeo Decl. Exs. 7, 8). As such, Plaintiff argues that "Defendant cannot now enforce the Agreement's forum selection clause." Pl.'s Opp'n 10. Rescission amounts to the "unilateral unmaking of a contract for a legally sufficient reason [and] .... is generally available as a remedy or defense for a non-defaulting party and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions." *Black's Law Dictionary* 1420–21 (9th ed.2009). The court does not agree with Plaintiff's characterization that Defendant's email and letter acted to rescind the Galaxy Operating Agreement. With the substance of Plaintiff's claims so directly tied to its purported right to equity interest in Galaxy, it hardly makes sense for Plaintiff to claim Defendant has rescinded the contract such that it is no longer in force. *See Schibuk v. Poinciana–Regency Ltd. P'ship*, 764 F.Supp. 878, 882 (S.D.N.Y. 1991) (rescission cannot be accomplished by unilateral demand in case of fully executed agreement); *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980*, 535 F.Supp. 833, 839 (E.D.N.Y.1982) (noting "well settled principles of contract law provid[ing] that rescission can be obtained only by the non-breaching party"). The Galaxy Operating Agreement remains in effect and its forum selection clause binds the parties.

**C. Dismissing Plaintiffs Claims is Appropriate in Light of the Forum Selection Clause**

 It is "within the sound discretion of the district court" whether to grant dismissal or order transfer of the case to another district in which it could have been brought. *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993). Courts in this District typically will dismiss rather than transfer a case where an applicable forum selection clause allows a plaintiff a choice of more than one permissible forum. *See, e.g., GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 409 (S.D.N.Y.2001); *Weingrad*, 2005 WL 2990645 at *6 ("Courts in this district have dismissed cases involving clauses that permit suit in both federal and state courts of a foreign jurisdiction ...."). The forum selection clause in the Galaxy Operating Agreement provides that members consent to "the exclusive jurisdiction of the state and federal courts sitting in California," Taddeo Decl. Ex. 5 at 14, but does not restrict prospective plaintiffs as to which. To transfer this case to the District Court for the Central District of California, as Defendant alternatively requests, would therefore "depriv[e] plaintiff of its right under the forum selection clause of this contract to bring suit in *either* state or federal court." *GMAC Commercial Credit, LLC*, 198 F.R.D. at 409 (emphasis in original).

## IV. Conclusion

Therefore, upon consideration of Defendant's Motion to Dismiss or Transfer, Plaintiff's Memorandum of Law in Opposition, the applicable legal standards and relevant facts, and all other documents filed in this proceeding, the court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED;** and further

**ORDERS** that Defendant's motion to transfer is **DENIED.**