06-3501-cv
S.K.I. Beer Corp. v. Baltika Brewery

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: October 18, 2007                                    Decided: July 20, 2010)

Docket No. 06-3501-cv

_____

S.K.I. BEER CORP.,

*Plaintiff-Appellant,*

*-v.-*

BALTIKA BREWERY,

*Defendant-Appellee.*

_____

BEFORE:        KEARSE, SACK, HALL, *Circuit Judges.*

_____

Plaintiff-appellant S.K.I. Beer Corp. appeals from the July 19, 2006 judgment of the

United States District Court for the Eastern District of New York (Glasser, *J.*), granting

defendant-appellee Baltika Brewery's motion to dismiss the complaint based upon a forum

selection clause in the parties' written agreement.  We conclude that S.K.I. Beer Corp. failed to

make a clear showing that enforcement of the parties' contractual forum selection clause is

unreasonable, unjust, or invalid, and that the district court was correct in granting the motion.

**AFFIRMED.**

1

GARY ETTELMAN, Ettelman & Hochheiser, P.C. (Mark S. Pomerantz and Amy Klie, *on the brief*), Garden City, NY, *for Plaintiff-Appellant*.

STEPHEN P. DAVIDSON, DLA Piper US, LLP (Stephanie K. Vogel, *on the brief*), New York, NY, *for Defendant-Appellee*.

HALL, *Circuit Judge*:

Plaintiff-appellant S.K.I. Beer Corp., a New York beer wholesaler, appeals from the judgment of the United States District Court for the Eastern District of New York (Glasser, *J.*), dismissing its action against defendant-appellee Baltika Brewery, a Russian brewer, based on a forum selection clause in the parties' agreement. *See S.K.I. Beer Corp. v. Baltika Brewery*, 443 F. Supp. 2d 313 (E.D.N.Y. 2006). On appeal, S.K.I. Beer Corp. argues that the forum selection clause is unenforceable because: (1) New York Alcoholic Beverage Control Law § 55-c (hereinafter "§ 55-c"), governing agreements between brewers and beer wholesalers, applies to the parties' relationship; (2) applying § 55-c to the parties' relationship would not violate the dormant Commerce Clause; and (3) the forum selection clause is unenforceable because it violates its right under § 55-c "to bring a judicial action in New York for violations of the act," and "contravenes a strong public policy of the forum state" of protecting beer wholesalers, which is embodied in the statute.[1]

---

[1] The text of relevant provisions of New York Alcoholic Beverage Control Law § 55-c is set out below.

2

## BACKGROUND

In 2000, defendant-appellee Baltika Brewery ("Baltika"), the owner of various beer brands, designated plaintiff-appellant S.K.I. Beer Corp. ("SKI") as its exclusive brand agent in New York State; it did so by a letter to the State of New York Division of Alcoholic Beverage Control Wholesale Bureau. In 2003, Baltika and SKI entered into a written agreement for the purchase and sale of $200,000 worth of Baltika beer and non-alcoholic beverages. According to the agreement, SKI purchased the beverages "on the terms FCA (3, 6-th Verkhniy Pereulok, St. Petersburg, Russia)."[2] The agreement provided: "All disputes or differences which may arise in the course of fulfillment of, or in connection with, the present Contract, shall be considered by the Arbitration Court of St. Petersburg and the Leningradskaya Oblast. Awards of the said Court shall be final and binding upon both Parties."[3] In December 2003, the parties supplemented their agreement, extending it until July 1, 2004.

SKI commenced an action in district court claiming that Baltika had stopped performing under the contract by refusing to fill SKI's order, in violation of both § 55-c and the parties' written agreement. Baltika moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the forum selection clause in the parties' agreement mandated dismissal. SKI opposed the motion, claiming that dismissal was precluded by § 55-c because Baltika established a contractual relationship with a New York licensed wholesaler for purposes of

---

[2] "FCA" is an abbreviated form of "free carrier," which means that "the seller delivers the goods, cleared for export, to the carrier nominated by the buyer at the named place." International Chamber of Commerce, Incoterms 2000, at 33 (1999).

[3] It is not disputed that the Russian arbitration courts are state courts and not arbitration tribunals.

3

having Baltika beer distributed in New York State. SKI also argued that the forum selection clause is unreasonable because it contravenes New York's public policy interest in protecting its licensed beer wholesalers and, if enforced, the clause would deprive SKI of its statutory rights under § 55-c.

The district court granted the motion to dismiss the complaint "based upon the mandatory forum selection clause." *S.K.I. Beer Corp.*, 443 F. Supp. 2d at 325. The court concluded that § 55-c did not apply because "it regulates only those sales and deliveries which take place in the State of New York," none of the sales or deliveries under the contract occurred in New York, and Baltika was not a brewer subject to the statute. *Id.* at 322-23. The court determined that even if the contract fell within the scope of § 55-c, the forum selection clause is enforceable because SKI failed to show that the enforcement of the forum selection clause "would impair rights protected by the Statute" and that such rights are "substantial enough to constitute a 'strong public policy.'" *Id.* at 323.

On appeal, SKI argues three points. It contends that: (1) "Baltika's relationship with SKI is governed by New York's Alcoholic Beverage Control Law;" (2) "applying section 55-c to the relationship between Baltika and SKI would not violate the dormant Commerce Clause;" and (3) "the forum selection clause is unenforceable" because "Section 55-c precludes pre-dispute agreements containing a clause requiring a forum outside of New York," and "when a state legislative [*sic*] provides for and believes that an in-state forum is necessary to vindicate the rights afforded under a statute, the public policy is sufficiently elevated to overcome the presumed validity of the forum selection clause."

4

# DISCUSSION

## I.  Standard of Review

"On an appeal of a district court's dismissal based on a forum selection clause, we review factual findings for clear error and legal conclusions *de novo*."  *Asoma Corp. v. SK Shipping, Co.*, 467 F.3d 817, 822 (2d Cir. 2006).

## II.  Merits

### A.  Whether the Forum Selection Clause Is Presumptively Enforceable

This Court has explained that "[d]etermining whether to dismiss a claim based on a forum selection clause involves a four-part analysis" that proceeds in the following manner:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so.  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
> If the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)) (emphases in original) (citations omitted).  In determining whether the forum selection clause is mandatory, "our initial focus is on the language of the contract."  *Id.* at 386.  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."  *Id.* "'When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'  Of course if

5

mandatory venue language is employed, the clause will be enforced." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994) (quoting *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)) (alteration and citations omitted).

Here, there is no dispute that the nature of the forum selection clause in the parties' agreement is mandatory. Nothing in the record indicates, and SKI does not contend, that the forum selection clause was not reasonably communicated to it. The parties do not dispute that SKI's claims arise directly from the agreement containing the forum selection clause and involve the parties to that agreement. In sum, the district court properly concluded that the forum selection clause is presumptively enforceable.

### B. New York Alcoholic Beverage Control Law § 55-c

We do not need to decide whether the agreement between SKI and Baltika is subject to § 55-c because, even if § 55-c did apply to the agreement, it does not bar the forum selection clause at issue here.

First, we examine the language of § 55-c. According to the statute, the purpose of § 55-c is as follows:

> It is hereby declared to be the policy of this state, that the sale and delivery of beer by brewers to beer wholesalers shall be pursuant to a written agreement. That further, the regulation of business relations between brewers and beer wholesalers is necessary and appropriate to the general economy and tax base of this state and in the public interest.

N.Y. ALCO. BEV. CONT. LAW § 55-c(1). The statute also provides, in pertinent parts:

> Except as provided for in subdivision ten of this section, beer offered for sale in this state by a brewer to a beer wholesaler shall be sold and delivered pursuant to a written agreement which conforms to the provisions of this section and which sets forth all essential and material terms, requirements, standards of performance and conditions of the

6

business relationship between a brewer and a beer wholesaler. Such agreement may be cancelled, terminated, materially modified or not renewed for good cause as defined in this section, provided the brewer has acted in good faith.

*Id.* § 55-c(3).

If a brewer fails to comply with the provisions of this section, a beer wholesaler may maintain a civil action in a court of competent jurisdiction within this state for damages sustained in accordance with the laws of this state which shall govern all disputes arising under an agreement or by reason of its making and performance.

*Id.* § 55-c(6).

SKI contends that § 55-c "grants the wholesaler the right to sue in New York" and the written agreement "takes that right away by requiring a Russian forum."[4] SKI argues that "the right afforded wholesalers to bring a civil action in New York cannot be 'altered, waived or modified' prior to a genuine dispute." Contrary to SKI's contentions, however, while § 55-c(11) states that "[t]he requirements of this section may not be altered, waived or modified by written or oral agreement in advance of a bona fide case or controversy arising under a written agreement complying with this section," nothing in the language of the section indicates that it is a requirement that a beer wholesaler has a nonwaivable option to maintain a civil action within the state of New York. *See* N.Y. ALCO. BEV. CONT. LAW § 55-c. The section indicates only that a beer wholesaler "may" maintain a civil action in a court of competent jurisdiction within New York State. *See id.* § 55-c(6). Similarly, the section does not state that a beer wholesaler is prevented from agreeing to maintain a civil action in a different forum. *See id.* § 55-c. Moreover,

---

[4] In a footnote, SKI states: "Any contention that SKI willingly desired to litigate in Russia under Russian law is totally illogical and is belied by the fact that SKI commenced this action here." SKI's statement is spurious because the record does not indicate, and SKI never claimed below, that it signed the parties' agreement unwillingly, under duress, coercion, or any other undue influence, or that somehow it did not read or understand the forum selection clause when it signed the agreement.

while § 55-c provides that "[t]he requirements" of the section "may not be altered, waived or modified by written . . . agreement in advance of a bona fide case or controversy," *id*. § 55-c(11), because we conclude that § 55-c(6) is permissive rather than mandatory, the forum selection clause in the parties' agreement cannot have "altered, waived or modified" "[t]he *requirements*" of the section. *See id*. § 55-c(11) (emphasis added).

That the New York legislature did not intend to mandate that this civil action be brought in a court of competent jurisdiction within New York is apparent from the language of the statute itself. The legislature used permissive language to indicate that a beer wholesaler "may maintain" a civil action, and it used mandatory language to indicate that New York laws "shall govern" such an action. *Id.* § 55-c(6); *see Woernley v. Electromatic Typewriters*, 271 N.Y. 228, 234 (1936) (O'Brien, J., dissenting) ("The mandatory 'shall,' as applied to the examination, and the permissive 'may,' as applied to the issue of the subpoena, are used in emphatic contrast in the same section of the statue."); *Rosner v. Metro. Prop. & Liab. Ins. Co.*, 96 N.Y.2d 475, 479 (2001) ("we construe words of ordinary import with their usual and commonly understood meaning"); *cf. Rangolan v. County of Nassau*, 96 N.Y.2d 42, 47 (2001) ("[W]here . . . the Legislature uses different terms in various parts of a statute, courts may reasonably infer that different concepts are intended." (citation omitted)); *compare People ex rel. Doscher v. Sisson*, 222 N.Y. 387, 395 (1918) (stating that "permissive words used in statutes conferring power and authority upon public officers or bodies will be held to be mandatory where the act authorized to be done concerns the public interest [, such as public safety,] or the rights of individuals."). In fact, the legislature used "may" twenty times and "shall" thirty-two times in the statute, *see* N.Y. ALCO. BEV. CONT. LAW § 55-c, demonstrating its intentions with respect to different provisions of the statute. In addition,

8

where the New York legislature intends to require rather than permit a civil action such as this one to be maintained in New York State courts, it knows how to state that requirement, as it has done in other statutes. *See, e.g.*, N.Y. MULT. DWELL. LAW § 356 ("Any action or proceeding referred to in this article shall be brought in the supreme court, county court or other court of competent jurisdiction in the county in which the premises are situated."); N.Y. STATE FIN. LAW § 123-c(1) ("An action pursuant to this article shall be brought in the supreme court in any county wherein the disbursement has occurred, is likely to occur, or is occurring, or in the county in which the state officer or employee has his or her principal office.").

SKI relies primarily on *E & J Gallo Winery v. Morand Bros. Beverage Co.,* 247 F. Supp. 2d 973 (N.D. Ill. 2002) and *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), in support of its argument that the forum selection clause is unenforceable because it "precludes SKI's selection of a New York forum to bring this action." The state statutes at issue in those two cases, however, mandate protections not available under the New York statute at issue here: either designating courts in a specific state as the exclusive forum, *see E & J Gallo Winery*, 247 F. Supp. 2d at 977 (holding that "enforcement of the California forum selection clause would contravene Illinois public policy" because the plaintiff "filed the instant action in Illinois based on the requirements of the Beer Act, which has a specific venue provision requiring lawsuits relating to agreements governed by the Act to be filed in state or federal court in Illinois"[5]), or expressly

---

[5] The Illinois Beer Act provides: "If the brewer or wholesaler who is a party to an agreement pursuant to this Act fails to comply with this Act or otherwise engages in conduct prohibited under this Act, the affected party may maintain a civil suit in court if the cause of action directly relates to or stems from the relationship of the individual parties under the agreement, *provided that any such suit shall be filed in a State or federal court of competent jurisdiction located in Illinois.*" 815 ILL. COMP. STAT. 720/9(1) (emphasis added).

9

voiding provisions in agreements specifying an out-of-state forum, *see Jones*, 211 F.3d at 498

(holding that a provision in a franchise agreement "that requires a California franchisee to resolve

claims related to the franchise agreement in a non-California court[6] directly contravenes

[California's] strong public policy").  Importantly, not only in contradistinction to the statutes at

issue in the cited cases but also as further support for our interpretation of the New York statute, §

55-c includes no similar protections.

Absent language in the statute that New York courts are the exclusive forum for a civil

action by a beer wholesaler, the mere assertion that the agreement "takes . . . away [the right to sue

in New York] by requiring a Russian forum" and that such a right "cannot be 'altered, waived or

modified' before a bona fide dispute arises" is not sufficient to defeat the presumptively

enforceable forum selection clause.[7]

## C.  Public Policy Considerations

On appeal, SKI asserts that "Section 55-c's ban on pre-dispute forum selection clauses

removes this case from the general rule that such clauses are presumptively valid, and elevates the

public policy involved to the level required to render the clause unenforceable."  SKI also argues

that "the combination of a Russian forum and Russian substantive law will likely not provide SKI

with the opportunity to vindicate its rights under Section 55-c."

---

[6] The California statute provides: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state."  CAL. BUS. & PROF. CODE § 20040.5.

[7] Because we conclude that § 55-c does not affect the forum selection clause at issue in this case, we do not need to reach the question of whether, if it did, the dormant Commerce Clause would be violated.

A resisting party can rebut the presumption of enforceability by clearly showing "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen,* 407 U.S. at 15. The rule announced in *Bremen* applies with equal force in diversity cases, such as this one. *Jones v. Weibrecht*, 901 F.2d 17, 18-19 (2d Cir. 1990). This exception to enforceability is interpreted narrowly, rendering forum selection clauses unreasonable only:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (internal citations and quotation marks omitted).

Examining SKI's argument in view of our decision in *Roby*, we find it unavailing. *Roby* addressed whether the anti-waiver provisions in federal securities laws embodied sufficiently strong public policy to render unenforceable a forum selection clause mandating England as the exclusive forum.[8] *See id.* at 1361-66. We held in *Roby* that the plaintiffs failed to rebut the presumption of enforceability because they did not show that the clauses at issue in that case subverted "a strong national policy, particularly one that for over fifty years has served as the foundation for the United States financial markets and business community." *Id.* at 1364-65. Here, the district court determined that, just as the *Roby* plaintiffs, where the plaintiff "failed to

_____

[8] In *Roby*, we explained that if the plaintiffs "were able to show that available remedies in England are insufficient to deter British issuers from exploiting American investors through fraud, misrepresentation or inadequate disclosure, we would not hesitate to condemn the choice of law, forum selection and arbitration clauses as against public policy." 996 F.2d at 1365.

show that English law did not offer adequate protections to investors to qualify as an acceptable alternative," SKI's "assertion that New York law would not be applied and [SKI] would not have a substantive remedy in St. Petersburg is unsupported by any evidence." *S.K.I. Beer Corp.*, 443 F. Supp. 2d at 324. The court found that SKI "has given the [c]ourt no indication of whether or not the law of St. Petersburg provides similar substantive protections, nor has it provided any evidence that its rights will not be protected under ¶ 13.7 of the Contract which provides for mutual payments after the termination of an agreement" and, thus, that "there has been no showing capable of defeating the forum selection clause." *Id.* The district court properly applied our reasoning in *Roby*, finding that the mere "speculation as to what rights [SKI] would or would not maintain in St. Petersburg" was not sufficient to rebut the presumption of validity of the forum selection clause. *Id.* at 323-25.

Finally, SKI obliquely suggests that § 55-c was enacted "pursuant to the powers reserved to the states under the 21st Amendment, to promote the public's interest in fair, efficient and competitive distribution of malt beverage products via regulating the relationship between brewer and distributor." SKI's contention concerning the 21st Amendment consists only of the sentence quoted above and is not sufficient to preserve the argument for our review. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

## CONCLUSION

For the reasons stated above we **AFFIRM** the district court's judgment dismissing the complaint based on the parties' contractual forum selection clause.