**MAGI XXI, INC., Plaintiff–Appellant,**

v.

**STATO DELLA CITTÀ DEL VATICANO a/k/a The Holy See, Defendant–Appellee,**

**Gerald P. Colapinto, Second Renaissance, LLC, Defendants.\***

**Docket No. 12–568–cv.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 21, 2013.

Decided: April 30, 2013.

---

\* The Clerk of the Court is directed to amend the official caption to conform to the above.

Bernard Kobroff, Goetz Fitzpatrick LLP, New York, NY, for Appellant.

David Dunn (Benjamin J.O. Lewis, on the brief), Hogan Lovells U.S. LLP, New York, NY, for Appellee.

Before: CHIN and DRONEY, Circuit Judges, and RESTANI, Judge.**

DRONEY, Circuit Judge:

Plaintiff–Appellant Magi XXI, Inc. ("Magi") appeals from a judgment of the United States District Court for the Eastern District of New York dismissing the counts of its amended complaint directed against Defendant–Appellee Stato della Città del Vaticano a/k/a The Holy See (the "Vatican State"). Those counts allege fraud, negligence, breach of contract, unjust enrichment, and conversion, in connection with a licensing program involving artwork and artifacts in the Vatican Library collection. The district court held that venue in the Eastern District of New York was improper based on forum selection clauses contained in sublicense agreements. We AFFIRM the judgment of the district court.

## BACKGROUND

Magi is a New York corporation with its principal place of business in Long Beach,

** The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

New York. The Vatican State is the territory over which the Holy See of the Roman Catholic Church exercises sovereignty. The Vatican Office of Publications, acting on behalf of the Vatican State, has the authority to enter into contracts with third parties for the commercial exploitation of the artwork and artifacts in the Vatican Library collection. Defendant Second Renaissance, LLC ("Second Renaissance") is a limited liability company with its principal place of business in Corona, California. Defendant Gerald P. Colapinto is the President of Second Renaissance.

On May 22, 2000, the Vatican Office of Publications and Second Renaissance entered into a Master License Agreement. The Master License Agreement stated that the Vatican State "owns or controls all artwork, artifacts, manuscripts, and items within or under the control of the [Vatican Library]," and that the Vatican Office of Publications "alone has the power to license the right to make reproductions and adaptations of items in the Vatican Library Collection." Under the Master License Agreement, the Vatican Office of Publications granted to Second Renaissance the rights to produce and market specific lines of products based on reproductions of artifacts in the Vatican Library and, subject to certain conditions, to sublicense those rights. As to sublicensing, the Master License Agreement provided that Second Renaissance would

> have the right to sell, sublicense or assign the rights granted herein, provided that: (1) the proposed buyer, assignee and/or sublicensee is identified by [Second Renaissance] in writing; (2) the buyer, sublicensee and/or assignee is approved in writing by [the Vatican Office

of Publications] or is fifty percent (50%) or more owned or controlled by [Second Renaissance], and (3) the proposed buyer, sublicensee or assignee agrees to be bound by the terms and conditions of this Agreement.

The Master License Agreement also contained a forum selection clause and a choice of law clause, which provided:

> Any disagreements between [the Vatican Office of Publications] and [Second Renaissance] shall be resolved exclusively in the Sovereign State of Vatican City.[1] [Second Renaissance] hereby consents to jurisdiction in the Sovereign State of Vatican City. All disputes relating to this Agreement between [the Vatican Office of Publications] and [Second Renaissance] shall be governed by the laws of the Sovereign State of Vatican City, and [Second Renaissance] and [the Vatican Office of Publications] hereby consent thereto. Any proceedings shall be conducted in the English language.

On July 18, 2001, pursuant to the Master License Agreement, Magi entered into seven sublicense agreements with Second Renaissance (the "Sublicense Agreements") for the production by Magi of candles, chocolates, confections, flowers, stamps, wrapping paper/gift bags, and fundraising materials, which would all bear the name, logo, and seal of the Vatican Library.[2] The Sublicense Agreements were approved by the Vatican Office of Publications, as required by the Master License Agreement. The Sublicense Agreements also all contained the following forum selection and choice of law clauses, which were identical to the ones contained in the Master License Agreement:

---

1. The Sovereign State of Vatican City is the same as the Vatican State.

2. Magi was formerly known as E–21 Global, Inc., and signed the Sublicense Agreements under that title.

Any disagreements between [Second Renaissance] and [Magi] shall be resolved exclusively in the Sovereign State of Vatican City. [Second Renaissance] and [Magi] each hereby consents to jurisdiction in the Sovereign State of Vatican City. All disputes relating to this Agreement between [Second Renaissance] and [Magi] shall be governed by the laws of the Sovereign State of Vatican City, and [Second Renaissance] and [Magi] each hereby consents thereto. All proceedings shall be conducted in the English language.

The Sublicense Agreements also provided that if any conflict arose between the Sublicense Agreements and the Master License Agreement, the latter would control.

On July 17, 2007, Magi filed suit against Colapinto, Second Renaissance, and the Vatican State in the United States District Court for the Eastern District of New York. In its amended complaint, Magi alleged that Colapinto and Second Renaissance did not provide Magi with the contracted-for access to artwork and commercially usable images of the materi-

als that Second Renaissance had, in turn, licensed from the Vatican Library. Magi further alleged that Colapinto and Second Renaissance had misrepresented the nature of Colapinto's relationship with the Vatican State as well as the availability of certain images in the Vatican Library. Magi also claimed that the Vatican State was aware of Second Renaissance's and Colapinto's purported misrepresentations, and that Second Renaissance and Colapinto had acted as agents for the Vatican State in the course of breaching the Sublicense Agreements. Magi alleged fraud, negligence, breach of contract, unjust enrichment, and conversion, and sought damages and rescission of the Sublicense Agreements.[3] On October 12, 2010, the Vatican State filed separate motions to dismiss based on (1) subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and (2) the forum selection clauses and/or *forum non conveniens*.[4]

On August 24, 2011, after reviewing the amended complaint and declarations sub-

---

**3.** The Vatican Office of Publications and the Vatican Library, as well as numerous John Does, were formerly defendants. The only parties that remain are plaintiff Magi and defendants Second Renaissance, Colapinto, and the Vatican State. Magi asserted jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, 1332, and 1367; we assume jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332.

**4.** The Vatican State did not cite to Rule 12(b) in its memorandum of law in support of its motion to dismiss on the basis of the forum selection clauses. Neither the U.S. Supreme Court nor the Second Circuit has "specifically designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.'" *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir.2006) (quoting *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 28 (2d Cir.

1997)). Courts in this Circuit have treated requests for dismissal based on forum selection clauses as if brought under Rule 12(b)(1) for lack of subject matter jurisdiction or under Rule 12(b)(3) for improper venue. *Compare AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152 (2d Cir.1984) (Rule 12(b)(1)), *with Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.*, 493 F.Supp. 626, 629 (S.D.N.Y.1980) (Rule 12(b)(3)). Because the Vatican State moved in the alternative to dismiss on the basis of *forum non conveniens*, which is a "supervening venue provision," *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (internal quotation marks omitted), the district court treated the Vatican State's motion to dismiss based on the forum selection clauses as a Rule 12(b)(3) motion to dismiss for improper venue. Because we resolve this matter on the basis of the forum selection clauses, we need not reach the *forum non conveniens* issues.

mitted by the parties, the district court (Mauskopf, *J.*) granted the Vatican State's motion to dismiss for improper venue on the basis of the forum selection clauses in the Sublicense Agreements, and therefore found it unnecessary to decide the Vatican State's motion to dismiss for lack of subject matter jurisdiction. *See Magi XXI, Inc. v. Stato della Città del Vaticano*, 818 F.Supp.2d 597 (E.D.N.Y.2011). In its Memorandum and Order, the district court identified five separate grounds for determining that the Vatican State is a "closely related" party to Second Renaissance, and that it was foreseeable to Magi that the Vatican State would seek to enforce the forum selection clauses against Magi. The district court summarized its reasoning as follows:

> There are multiple grounds for this conclusion: (1) the Vatican State's interests in the sublicense agreements are derivative of and directly related to [Second Renaissance]'s conduct in entering into and allegedly violating those agreements; (2) [Second Renaissance]'s rights in the sublicense agreements are derivative of and depend on the rights it acquired from the Vatican State; (3) the Master License Agreement entitled the Vatican State to exercise significant control over the form and content of the sublicense agreements; and (4) plaintiff alleges the signatories ( [Second Renaissance] and Colapinto) are the non-signatory's (Vatican State) agents for liability purposes and its claims against all three

defendants are essentially identical. Moreover, the Vatican State may enforce the forum selection clause in the Master License Agreement as a signatory because plaintiff asserts claims for breach of contract on the theory that it is a third-party beneficiary of that agreement.

*Id.* at 606. Because this Memorandum and Order disposed only of the claims against one defendant, the district court (Kuntz, *J.*) issued an Order for Entry of Final Judgment pursuant to Federal Rule of Civil Procedure 54(b).[5] The Order of Final Judgment was entered on February 2, 2012. Magi then brought the instant appeal.

## DISCUSSION

### I. Standard of Review

 "Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause, our review is *de novo*." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir.2007). "In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all the facts in a light most favorable to plaintiff." *Id.* "Contract interpretation as a question of law is also reviewed *de novo* on appeal." *Id.*

### II. Analysis[6]

 "[F]orum selection clauses are *prima facie* valid and should be enforced

---

5. The case had been transferred to Judge Kuntz after the decision of Judge Mauskopf dismissing the claims against the Vatican State.

6. We need not consider whether this Court lacks subject-matter jurisdiction by virtue of the Vatican State having immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611, because "[i]n appropriate circumstances, . . . a court may dismiss for lack

of personal jurisdiction without first establishing subject-matter jurisdiction." *Sinochem*, 549 U.S. at 431, 127 S.Ct. 1184 (internal citation omitted). As *forum non conveniens* is a "non-merits ground for dismissal," a court may "dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432, 127 S.Ct. 1184 (internal quotation marks

unless enforcement is shown by the resisting party to be unreasonable under the circumstances," *TradeComet.com LLC v. Google, Inc.,* 647 F.3d 472, 475 (2d Cir. 2011) (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)) (internal quotation marks omitted), or unless the forum selection clause "was invalid for such reasons as fraud or overreaching," *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721 (2d Cir.1982) (internal quotation marks omitted). We give "substantial deference" to the forum selected by the parties, particularly where this choice "was made in an arm's-length negotiation by experienced and sophisticated businessmen." *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997) (quoting *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. 1907). Because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," federal law applies to the interpretation of forum selection clauses in diversity cases. *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (per curiam).

▬▬▬ We apply a four-part analysis to determine whether to dismiss a claim based on a forum selection clause:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.

> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Phillips,* 494 F.3d at 383–84 (quoting *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. 1907) (internal citations and italics omitted). The district court determined that the forum selection clauses in the Sublicense Agreements were reasonably communicated and were mandatory, rather than permissive. *Magi XXI,* 818 F.Supp.2d at 605. The parties do not contest these determinations. In addition, although Magi argued that enforcement of the forum selection clauses here would be "unreasonable or unjust" before the district court, it does not raise that argument on appeal.[7] We

---

omitted). Enforcement of a forum selection clause may be similarly characterized, and because the considerations of convenience, fairness, and judicial economy weigh in favor of addressing the appropriate forum first in this case, we need not address any issues of immunity of the Vatican State under the FSIA. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 550 n. 3 (4th Cir.2006). The parties have also not raised this issue in this appeal.

**7.** We note that the "unreasonable and unjust" factor is to be "interpreted narrowly," mean-

ing that the forum selection clauses should not be enforced

> only "(1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state."

*S.K.I. Beer Corp. v. Baltika Brewery,* 612 F.3d 705, 711 (2d Cir.2010) (quoting *Roby v. Corp.*

therefore focus our analysis on the third factor: "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 494 F.3d at 383.

In general, "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir.2009). In *Aguas Lenders*, we held that a non-signatory successor in interest to a signatory of a contract is subject to the "presumption of the enforceability of mandatory forum selection clauses" in the contract. *Id.* We reasoned that this conclusion would prevent "parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations." *Id.* We also noted that "a forum selection clause involving sophisticated parties to an international transaction is an obligation that is calculated by parties into the cost of a contract." *Id.* (citing *M/S Bremen*, 407 U.S. at 14, 92 S.Ct. 1907). On this basis, we concluded that "a forum selection clause is integral to the obligations of the overall contract, and a successor in interest should no more be able to evade it than any other obligation under the agreement." *Id.*

The enforceability of forum selection clauses as to non-signatories need not be limited to successors in interest. "A literal approach to interpreting forum selection clauses—an approach that always ignored affiliates of the signatories—could . . . undermine the contribution that such clauses have been praised for making to certainty in commercial transactions." *Adams v. Raintree Vacation Exch., LLC,* 702 F.3d 436, 441 (7th Cir.2012). Forum selection clauses have the "salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). They also "further[ ] vital interests of the justice system," including judicial economy and efficiency, *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, *J.*, concurring), ensure that parties will not be "required to defend lawsuits in far-flung fora[,] . . . and promote uniformity of result." *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione,* 858 F.2d 905, 913 (3d Cir.1988) (internal citations and quotation marks omitted), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989)). As a result, "where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,* 485 F.3d 450, 456 (9th Cir.2007) (internal quotation marks omitted)).[8]

---

of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)).

**8.** Other circuits have endorsed the "closely related" doctrine for applying forum selection clauses. *See, e.g., Marano Enters. of Kan. v. Z–Teca Rests., L.P.,* 254 F.3d 753, 757–58 (8th Cir.2001); *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998); *Baker v. LeBoeuf, Lamb, Leiby & Macrae,* 105 F.3d 1102, 1105–06 (6th Cir.1997); *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988); *see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3d Cir.1983) (refusing to absolve a third-party beneficiary from the strictures of a forum selection clause which was foresee-

We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is "closely related" to another signatory. *Id.*[9] In such instances, the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is "foreseeable" to the signatory against whom the non-signatory wishes to enforce the forum selection clause.[10] *See Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993); *In re Optimal U.S. Litig.,* 813 F.Supp.2d 351, 369 (S.D.N.Y.2011). As the signatories to the contract have already assented to a forum selection clause and thus have agreed to litigate disputes relating to the contract in the chosen forum, this holding comports with the "legitimate expectations of the parties, manifested in their freely negotiated agreement." *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. 1907.

Here, the Vatican State was closely related to Second Renaissance by virtue of the Master License Agreement. In addition, the Vatican State's relationship with Second Renaissance was sufficiently close with regard to the licensing of reproductions of items in the Vatican Library collection that it was foreseeable to Magi that the Vatican State would seek to enforce the forum selection clauses in the Sublicense Agreements.[11] Several observations inform our reasoning. First, the Sublicense Agreements stated that their form and content, as well as Second Renaissance's right to assign the rights granted by the Sublicense Agreements to Magi, were subject to the approval of the Vatican State. Second, all of the artwork, artifacts, and manuscripts made available to Magi for reproduction were owned by the Vatican State and made available through the Vatican Library. Third, the Sublicense Agreements stated that any products made by Magi were subject to approval by the Vatican State. Fourth, Magi's interests in the Sublicense Agreements were wholly derivative of the rights Second Renaissance acquired from the Vatican State through the Master License Agreement. Fifth, the Sublicense Agreements stated that, if any conflicts between the Sublicense Agreements and the Master License Agreement arose, the latter would control. Sixth, the Master License Agreement and Sublicense Agreements had identical forum selection clauses. Lastly, Magi alleged that Second Renaissance and the Vatican State "acted in concert" while fraudulently inducing Magi to enter into the Sublicense Agreements.[12]

able), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

9. We reach this conclusion without disturbing our holding in *Smoothline Ltd. v. North American Foreign Trading Corp.* that the "closely related" test does not apply to the question of whether a non-signatory is bound by a mandatory arbitration clause. 249 F.3d 147, 155 & n. 4 (2d Cir.2001). That question is governed by the analysis set out in *Thomson–CSF, S.A. v. American Arbitration Ass'n,* which recognizes "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." 64 F.3d 773, 776 (2d Cir.1995).

10. In so holding, we do not reach the question of when a signatory may enforce a forum selection clause against a non-signatory.

11. We do not define every circumstance in which two parties may be considered "closely related." Rather, we hold only that the Vatican State and Second Renaissance were closely related by virtue of their close involvement in this case.

12. Magi alleged in its complaint that it was a third-party beneficiary of the Master License Agreement, which contained a virtually iden-

In sum, the Vatican State was known by Magi as the source of the contractual authority granted to Magi by the Sublicense Agreements. The Sublicense Agreements also specifically provided for the extensive and continuing involvement of the Vatican State in the execution of Magi's obligations and authority under the Sublicense Agreements. As a result of these considerations and the other factors described above, the Vatican State and Second Renaissance were "closely related" parties, and it was foreseeable that the Vatican State would enforce the forum selection clauses in the Sublicense Agreements against Magi. Magi's claims were thus properly dismissed by the district court.

 Magi also argues that the choice of law clauses in the Sublicense Agreements have a broader ambit than the forum selection clauses and so this dispute is not covered by the latter. However, Magi did not raise this argument before the district court. See Magi XXI, 818 F.Supp.2d at 605 n. 9 ("Plaintiff does not argue that the forum selection clauses do not apply to the claims in this case."). "It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir.2008) (per curiam) (internal quotation marks and alteration omitted). However, this rule is "prudential, not jurisdictional," and we have exercised our discretion to hear otherwise waived arguments "where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." Bogle–Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir.2006) (internal quotation marks omitted). "Therefore, where

an allegedly forfeited claim raises a pure question of law, we may choose to reach the merits." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 142 (2d Cir.2000) (internal quotation marks omitted). We do so here.

Magi contends that the forum selection clauses in the Sublicense Agreements do not apply to its tort claims against the Vatican State. To substantiate this argument, Magi notes that the forum selection clauses stated that they applied to any "disagreements" between the Vatican Office of Publications and Second Renaissance, while the choice of law clauses stated that they applied to "[a]ll disputes relating to this Agreement." Magi asserts that this difference in language suggests that the parties intended the choice of law provisions to apply to both contractual and tort claims while the forum selection clauses applied only to contractual claims.

 Magi misapprehends the scope of the forum selection clauses. A contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims "ultimately depend on the existence of a contractual relationship" between the signatory parties. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.1983), overruled on other grounds by Lauro Lines, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548. "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." Manetti–Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir.1988); see also Lambert v. Kysar, 983 F.2d 1110, 1121–22 (1st Cir.1993) ("[C]ontract-related tort claims involving the same

tical forum selection clause to that of the Sublicense Agreements. The Vatican State arguably could also enforce the forum selec-

tion clause in the Master License Agreement against Magi. See Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 n. 7 (7th Cir.1993).

operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.").[13] We must therefore determine whether Magi's tort claims require interpretation of the Sublicense Agreements.

Magi's complaint alleges that the Vatican State failed to correct certain misleading misrepresentations made by Colapinto and Second Renaissance regarding the availability of images from the Vatican Library for licensing, negligently oversaw aspects of its licensing program, breached the Master License Agreement, and was unjustly enriched by its breach of the Master License Agreement. Each of these claims relates to the rights and duties set out in the Sublicense Agreements and the Master License Agreement. These claims cannot be properly adjudicated without determining whether the parties were in compliance with the Sublicense Agreements and the Master License Agreement. Because the resolution of these claims requires interpretation of the contracts at issue, they fall within the scope of the forum selection clauses in the Sublicense Agreements. The slight difference in language in the two clauses (that is, the use of the terms "disagreements" and "disputes" in the forum selection clauses and choice of law clauses, respectively) does not alter this conclusion. The Vatican State may therefore enforce the forum selection clauses in the Sublicense Agreements against Magi as to both Magi's contract and tort claims.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment dismissing Magi's claims on grounds of improper venue based on the forum selection clauses contained in the Sublicense Agreements.

13. Of course, this situation differs from the circumstance in which a party seeks to enforce a forum selection clause that another party alleges was itself the product of fraud or coercion. The forum selection clause in that case would be unenforceable. *See Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Adams v. Raintree Vacation Exch., LLC,* 702 F.3d 436, 443 (7th Cir.2012).