# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 19, 2023

Lyle W. Cayce
Clerk

————————

No. 21-50431

————————

S. Christopher Ney,

*Plaintiff—Appellant*,

*versus*

3i Group, P.L.C.; 3i Corporation,

*Defendants—Appellees*.

———————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1142

———————————————————————————

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:[*]

In March 2019, New Amsterdam Software Holdings acquired Magnitude Software Inc. ("Magnitude") for $340 million following an extensive bidding process. Christopher Ney, the CEO of Magnitude, was an integral part of these negotiations. Ney alleges that during these negotiations the president of New Amsterdam Software Holdings, Andrew Olinick, promised Ney a $20 million "kicker" in exchange for Ney's support of the

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-50431

2019 sale of Magnitude. Ney filed suit to enforce this alleged oral contract, and the district court dismissed his claim for *forum non conveniens* pursuant to a valid forum-selection clause. Ney appeals this dismissal. For the reasons given below, we AFFIRM.

I.

Plaintiff-Appellant Christopher Ney, a Texas citizen, co-founded Magnitude, an Austin-based software firm. Ney also served as the CEO of Magnitude. In 2018, Magnitude entered negotiations with several private equity funds and investment companies concerning a potential sale of the company. One of those potential buyers was Defendant-Appellee 3i Group, an international private equity group organized in England and Wales with its principal place of business in London. During these negotiations Ney communicated primarily with Andrew Olinick, who held himself out as a 3i Group partner, co-head of North American Private Equity, and Global Head of Business and Technology, but who now claims to have been acting on behalf of a related corporation, 3i Corporation. Because of this, Ney brings his claims against both 3i Group and 3i Corporation (referred to collectively as the "3i Defendants").[1]

Ney alleges he negotiated with the 3i Defendants regarding a potential sale throughout 2018 and 2019. During these negotiations, Olinick repeatedly pressed Ney to put the 3i Defendants at the "front of the line." Olinick told

---

[1] We note that the district court found that "the exact relationship between 3i Corporation, 3i Group, and New Amsterdam is opaque." The 3i Defendants' brief clarifies this relationship. The 3i Defendants did not directly purchase Magnitude. Rather, New Amsterdam Software Holdings purchased Magnitude, and New Amsterdam Software Holdings' general partner is New Amsterdam Software GP LLC. 3i Group is a British-private equity firm that was one of New Amsterdam Software Holdings' indirect investors. 3i Corporation is an investment advisory company for 3i Group incorporated in Massachusetts with its principal place of business in New York.

No. 21-50431

Ney that although the 3i Defendants "had previously committed to a firm purchase price of $360 million, 3i Group's investment committee now could only get to a $340 million purchase price." Ney responded that $340 million was unacceptable.

In light of Ney's rejection of a $340 million purchase price, Ney claims that Olinick proposed an oral contract. Olinick suggested that a $20 million "kicker" be paid to Ney. Specifically, Olinick promised that 3i Group would pay Ney $20 million if Ney (i) worked to keep 3i Group at the "front of the line" in the acquisition negotiations, (ii) got the deal done, and (iii) stayed on as CEO of Magnitude during the post-acquisition period. Ney claims that he accepted the 3i Defendants' offer and pushed the negotiations to a successful close, stayed on as Magnitude's CEO, rolled $6 million back into Magnitude, and successfully transitioned the company post-closing.

In March 2019, New Amsterdam Software Holdings purchased Magnitude for $340 million. This sale, as well as Ney's compensation with respect to it, is governed by various interlocking written contracts, namely: the Stock Purchase Agreement ("the Purchase Agreement"), the Restrictive Covenant Agreement, two Incentive Unit Grant Agreements, a Rollover Contribution and Subscription Agreement ("the Rollover Agreement"), which is Exhibit B to the Purchase Agreement, and two organizational agreements. All of the agreements are either dated March 18, 2019, or May 2, 2019.

The primary agreement depicting the terms of the Magnitude sale is the Purchase Agreement. Signed by Olinick and Timothy Mack as President of Magnitude, this agreement, like the other six ancillary agreements, notes that all seven agreements constitute "the complete agreement by, between and among the parties." Additionally, the Purchase Agreement contains a forum-selection clause:

[E]ach of the parties to this Agreement hereby irrevocably . . .

3

No. 21-50431

submits to the exclusive jurisdiction of the Court of Chancery of the State of Delaware (or if such court lacks jurisdiction, any other state or federal court sitting in the State of Delaware) in respect of any litigation, action or proceeding . . . arising out of or relating to this Agreement, the negotiation, execution or performance of this agreement or the transactions contemplated hereby.

The Purchase Agreement attached the Rollover Agreement as Exhibit B. In the Rollover Agreement, Ney agreed to rollover into the new organization his "Company Shares with a dollar value equal to $6,000,000" in exchange for partnership interests in New Amsterdam Software Holdings. Within the Rollover Agreement, the parties agreed to "submit to the exclusive jurisdiction" of courts in Delaware "in respect of the interpretation and enforcement of the provisions of this agreement and any related agreement, certificate or other document delivered in connection herewith." They also agreed that "[t]his Agreement and the agreements and documents referred to herein contain the complete agreement among the parties hereto and supersede any prior understandings, agreements or representations by or among the parties hereto, written or oral, that may have related to the subject matter hereof in any way." This agreement was signed by Olinick and Ney.

On July 7, 2020, eighteen months after the sale was completed, Ney was terminated as CEO. Ney claims that the 3i Defendants have breached the oral agreement by failing to pay him the agreed upon $20 million. In response, the 3i Defendants contend that the alleged oral contract was never made.

## II.

To recover damages under the alleged oral contract, Ney filed suit in a Texas state court against New Amsterdam Software Holdings and New Amsterdam Software GP LLC (collectively the "New Amsterdam

entities"), and 3i Group. The New Amsterdam entities moved to dismiss based on forum-selection clauses in the written contracts that unambiguously provided Delaware as the exclusive forum for resolving disputes relating to the Magnitude negotiation and purchase. Although the New Amsterdam entities noted in their motion to dismiss that the written contracts would likewise prohibit claims against 3i Group, 3i Group was not subject to the motion to dismiss for failure to comply with the forum-selection clause because 3i Group had filed a contemporaneous Special Appearance challenging the Texas court's jurisdiction. The Texas state court granted the New Amsterdam entities' motion to dismiss on the basis of the forum-selection clauses. The only defendant that remained was 3i Group.

Following the state court's dismissal of the New Amsterdam entities, Ney amended his state court petition to add 3i Corporation as an additional defendant, bringing the total number of defendants to two: 3i Group and 3i Corporation. Ney contended that he was owed $20 million under the oral contract and asserted breach of contract, promissory estoppel, and unjust enrichment/quantum meruit claims against the 3i Defendants. After removal to federal court based on diversity, the 3i Defendants filed their motion to dismiss arguing that Ney's claims should be dismissed because (i) his pleadings failed to state a claim under Rule 12(b)(6), (ii) venue was improper given the various written agreements' forum-selection clauses under Rule 12(b)(3), and (iii) the court lacked personal jurisdiction over 3i Group.

The magistrate court granted the 3i Defendants leave to file a supplemental motion to raise the forum-selection clause argument in a *forum non conveniens* posture rather than under Rule 12(b)(3). After holding oral argument, the magistrate court issued a Report & Recommendation ("R&R") that recommended granting the 3i Defendants' supplemental motion to dismiss based on forum-selection clauses in two written

No. 21-50431

agreements: the Purchase Agreement and the Rollover Agreement. Ney filed objections to the R&R with the district court. The district court accepted and adopted the R&R, dismissing the case without prejudice pursuant to the forum-selection clauses in both the Purchase Agreement and the Rollover Agreement. Ney appeals to this Court.

## III.

We review the district court's interpretation of a forum-selection clause and its assessment of that clause's enforceability *de novo* and the district court's balancing of the public and private interest factors for abuse of discretion. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). Federal law applies to determine the enforceability of forum-selection clauses in diversity cases. *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008).

## IV.

As an initial matter, Ney argues that the district court should not have considered the Purchase Agreement or the Rollover Agreement—both of which were attached to the 3i Defendants' motion—because Ney did not reference those agreements in his state court petition, nor are the agreements central to Ney's claims.[2] Ney acknowledges, however, that "[o]n a traditional *forum non conveniens* motion, it is within a district court's discretion to consider matters outside the pleadings," and that "weighing

---

[2] There is a potential preservation issue with this argument. In his objections to the magistrate court's R&R, Ney included a footnote alleging it was improper for the court to consider the Purchase Agreement and the Rollover Agreement in deciding the motion to dismiss. The Fifth Circuit has stated that "[a]rguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived." *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016). Because Ney's argument was buried in a footnote, this likely precludes our review. Nevertheless, as explained in the body of this opinion, Ney's objection fails on the merits.

private and public interest factors will invariably require the district court to wade beyond the pleadings to consider, for example, administrative difficulties flowing from court congestion or the ease of access to sources of proof."

We find that when evaluating a motion to dismiss based on a forum-selection clause, a court may consider matters outside the pleadings. As the R&R explains, and as Ney himself concedes, other courts resolving *forum non conveniens* motions based on forum-selection clauses have held that one may consider facts outside of the pleadings. *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082–83 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020); *Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1322 (S.D. Fla. 2016); *Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1245–46 (S.D. Fla. 2020) ("When ruling on a motion to dismiss for forum non conveniens, a court may consider matters outside the pleadings if presented in proper form by the parties."). In this case, the Rollover Agreement and the Purchase Agreement are central to Ney's petition, as the amended petition repeatedly references and relies on the purchase, the closing, and the completion of the Magnitude sale. It was within the district court's discretion to consider matters outside the pleadings in deciding the 3i Defendants' motion to dismiss, and it did not err in considering either the Purchase Agreement or the Rollover Agreement.

Ney next argues that the district court erred in concluding that the Rollover Agreement's forum-selection clause binds Ney, because (1) Ney's claims do not seek the interpretation and enforcement of any of the Rollover Agreement's provisions, (2) Ney's claims do not seek the interpretation or enforcement of a related agreement or other document delivered in connection with the Rollover Agreement, and (3) the Rollover Agreement's forum-selection clause does not cover Ney's equitable claims.

No. 21-50431

The Supreme Court has held that a valid forum-selection clause is entitled to "controlling weight in all but the most exceptional cases." *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 571 U.S. 49, 63 (2013). Under *Atlantic Marine*, a court must determine whether (i) "the forum-selection clause is mandatory or permissive," (ii) "the forum-selection clause is enforceable," and (iii) "'*Atlantic Marine*'s balancing test' of public interest factors" supports dismissal. *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073–74 (5th Cir. 2020) (quoting *Weber*, 811 F.3d at 766).

Ney does not dispute that the Rollover Agreement's forum-selection clause is mandatory. The forum-selection clause clearly provides for Delaware as the "exclusive forum" for any litigation arising out of the interpretation or enforcement of the Rollover Agreement and any related agreement's provisions. *PCL*, 979 F.3d at 1073 (quoting *Weber*, 811 F.3d at 768) ("A forum selection clause is mandatory if it affirmatively requires that litigation arising from the contract be carried out in a given forum."). *Atlantic Marine*'s first prong is met.

The Rollover Agreement's forum-selection clause is also enforceable, especially in light of the "'strong presumption' in favor of enforcing mandatory forum selection clauses." *Al Copeland Invs., LLC v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018). Ney argues that his claims do not seek the interpretation and enforcement of any of the Rollover Agreement's provisions, and thus the forum-selection clause does not encompass his claims. Ney's argument, however, belies the plain text of the clause, which says that the parties agree to litigate in Delaware "in respect of the interpretation and enforcement of the provisions of this agreement and any related agreement, certificate or other document delivered in connection herewith." The forum-selection clause applies to *any* litigation "in respect

of the interpretation" of *any* provision of the agreement. The Supreme Court has held that the term "respecting" means the same thing as "relating to," and thus covers any case in which a court will have to interpret any provision of the Rollover Agreement as part of its merits analysis, as it would here. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018) ("Use of the word 'respecting' in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.").

Additionally, the Rollover Agreement contains a merger clause which provides that the "[Rollover] Agreement and the agreements and documents referred to herein contain the complete agreement among the parties hereto and supersede any prior understandings, agreements or representations by or among the parties hereto, written or oral, that may have related to the subject matter hereof in any way." This merger clause is expansive and clearly encompasses Ney's alleged oral contract. Further, the provisions of the Rollover Agreement are relevant to Ney's claims because, as the district court correctly concluded, the Rollover Agreement memorialized Ney's alleged oral promise to "'roll' $6 million of Ney's own money back into Magnitude." Ultimately, we find that the subject matter of Ney's lawsuit is intertwined with and implicates the subject matter of the Rollover Agreement, and thus, the forum-selection clause within the Rollover Agreement is enforceable.

The district court also discussed how, although Ney is an "undisputed signatory to the Rollover agreement," the 3i Defendants are non–signatories. The district court went on to correctly hold that "the 3i Defendants were so closely related to New Amsterdam Software Holdings that they were permitted to negotiate the underlying agreements," and thus that they were permitted to enforce the forum-selection clause against Ney. *Magi XXI, Inc.*

*v. Stato della Città del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."). Regardless, Ney does not raise on appeal the issue of whether the 3i Defendants, as "closely related" entities, can enforce the Rollover Agreement as non–signatories. Ney has forfeited this issue on appeal.

Because the Rollover Agreement's forum-selection clause is both mandatory and enforceable, *Atlantic Marine*'s private-interest factors "strongly favor dismissal without prejudice." *Weber*, 811 F.3d at 775 ("The only remaining question is whether this is one of the rare cases in which the public-interest FNC factors favor keeping a case despite the existence of a valid and enforceable FSC."). We must now "review for abuse of discretion the district court's use of *Atlantic Marine*'s balancing test" of public-interest factors. *Id.* at 766. Having done so, we find no abuse of discretion. This is not one of those extraordinary cases where the public-interest factors can outweigh a mandatory and enforceable forum-selection clause. *Atlantic Marine*, 571 U.S. at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."); *Weber*, 811 F.3d at 767 ("Cases in which the public-interest factors are sufficiently strong to outweigh a valid FSC 'will not be common.'").

As the forum-selection clause in the Rollover Agreement is mandatory and enforceable, we need not address whether Ney's case falls within the Purchase Agreement's forum-selection clause. The district court's dismissal for *forum non conveniens* is AFFIRMED.